UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CARLETON J. SHOCKMAN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-02030 |
| | § | |
| **STATE FARM LLOYDS,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carleton J. Shockman claims coverage for wind and hail damage under his insurance policy with Defendant State Farm Lloyds. State Farm denied coverage, concluding that the damage to Shockman's property resulted from ordinary wear and tear, golf balls (the house is on a fairway), or other excluded causes. State Farm now moves to exclude the testimony of Shockman's only causation expert, Neil Hall. (Dkt. No. 27). After careful review of the filings, the record, and the applicable law, the Court **DENIES** the Motion.

**I. BACKGROUND**

Shockman's property was allegedly damage by an April 2021 hailstorm. (*See* Dkt. No. 27-1 at 9–10); (Dkt. No. 28-2 at 2–3). After inspecting the property, State Farm found no storm-related damage and denied coverage. (Dkt. No. 28-3 at 2–4). Shockman invoked the policy's appraisal process, which resulted in an award of $61,778.97, (Dkt. No. 28-4 at 2), but State Farm still denied coverage, (Dkt. No. 28-5 at 2–4).

Unsatisfied, Shockman sued State Farm, asserting claims for breach of contract, violations of the Texas Insurance Code, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices Act. (Dkt. No. 1 at 7–12). Shockman designated Neil Hall as an expert witness on (1) the condition of Shockman's property "following the hail and windstorm event" and (2) "the amount of funds necessary to repair the property to its original condition." (Dkt. No. 27-3 at 2). Hall, a licensed engineer and architect with over five decades of professional experience, (*see* Dkt. No. 28-2 at 79–83), concluded that hail caused the property damage on April 15, 2021, (*id.* at 7).

State Farm now moves to exclude Hall's testimony on three grounds: (1) Hall failed to conduct a credible investigation based on accepted standards; (2) his causation opinions are conclusory and unreliable; and (3) he began with a firm conclusion and sought only confirming evidence. (Dkt. No. 27 at 1).

## II.    LEGAL STANDARD

Witnesses who are qualified by "knowledge, skill, experience, training[,] or education" may present opinion testimony to the jury. Fed. R. Evid. 702; *see, e.g.*, *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc); *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Williams v. Manitowoc Cranes, LLC*, 898 F.3d 607, 623 (5th Cir. 2018) (quoting *Huss*, 571 F.3d at 452). "This is because '[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.'" *Id.* at 623–24 (quoting *Huss*, 571 F.3d at 452).

2

To be admissible, an expert's proffered testimony must be reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591–92, 113 S.Ct. 2786, 2795–96, 125 L.Ed.2d 469 (1993); *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016). To meet the "reliability" standard, a "party seeking to introduce expert testimony must show [that] (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Huss*, 571 F.3d at 452 (some internal quotations omitted) (quoting *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007)); *see also Carlson*, 822 F.3d at 199.

Courts consider several factors in determining the reliability of scientific evidence, including (1) whether the theory or procedure has undergone testing; (2) whether it has been subjected to peer review and publication; (3) the rate of error and the existence of standards controlling the theory or procedure; and (4) whether it has attained general acceptance. *See Daubert*, 509 U.S. at 593–94, 113 S.Ct. at 2796–97. When evaluating these factors, courts must focus on the reasoning or methodology underlying the expert testimony, not the ultimate conclusion. *Id.* at 595; *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). These factors can "help to evaluate the reliability even of experienced-based testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999). "In certain cases, it will be appropriate for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community." *Id.*

The test of reliability is "a flexible one." *Daubert*, 509 U.S. at 594, 113 S.Ct. at 2797. The Supreme Court has recognized that the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co.*, 526 U.S. at 150, 113 S.Ct. at 1175. Courts have broad latitude to determine whether *Daubert*'s specific factors are—or are not—reasonable measures of an expert's reliability in a particular case. *Id.* at 152, 113 S.Ct. at 1176.

Moreover, not every critique of an expert or their reasoning affects the admissibility of their testimony. Generally, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

Finally, a court's gatekeeping role is no substitute for the adversarial process. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S.Ct. at 2798; *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 852 (5th Cir. 2015). Thus, "the rejection of expert testimony is the exception rather than the rule." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (quoting Fed. R. Evid. 702 advisory committee's notes to 2000 amendments).

## III. DISCUSSION

The Court's task in evaluating expert testimony is not to determine whether the expert's conclusions are correct or to nitpick every data point or input used. Rather, the Court must ensure that the methodology used to reach those conclusions is reliable. *Daubert*, 509 U.S. at 595, 113 S.Ct. at 2797. Here, the Court finds that Hall employed a reliable approach consistent with practices in the field of forensic engineering by inspecting the property, analyzing weather data from multiple sources, documenting damage, and applying his professional experience to reach his conclusions. (Dkt. No. 28 at 7–13). State Farm's criticisms of Hall's specific factual inputs and conclusions do not show any fundamental flaws in his methodology. Instead, they go to the weight of his conclusions and are matters properly explored through cross-examination. *See Puga*, 922 F.3d at 294 ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."). Below, the Court examines Hall's methodology and explains why State Farm's objections do not warrant the exclusion of Hall's opinions.

### A. HALL'S METHODOLOGY

In a reliability challenge, the central question is "whether the expert testimony is based on a reliable methodology." *Daubert*, 509 U.S. at 595, 113 S.Ct. at 2797. "The focus . . . must be solely on principles and methodology, not on the conclusions they generate." *Id.* Hall's methodology is sufficiently reliable to satisfy the *Daubert* standard.

Hall is a licensed architect and civil engineer with over five decades of professional experience, including many years of experience in the field of forensic engineering. (*See*

5

Dkt. No. 28-2 at 79–83). He has served as an expert witness for over two decades on cases involving similar issues. (*See id.* at 79–98). His expert report outlines a methodical approach to determining the cause of damage to Shockman's property, (*id.* at 3–7), and includes supporting data, (*id.* at 10–77).

Hall's methodology contains several components. First, he conducted an in-person inspection of the property on June 6, 2023. (*Id.* at 3). During this inspection, he documented the condition of the roof and other property components through photographs and direct observation. (*Id.* at 3–4, 10–44). Hall then analyzed these observations in the context of potential causes. (*Id.* at 3–4, 7).

Second, Hall consulted multiple weather-data sources to determine if weather events capable of causing the observed damage had occurred at the property. (*Id.* at 4–7, 46–74). These sources included forensic weather reports from Hailstrike™, weather data from the National Oceanic and Atmospheric Administration, storm-event data from the National Centers for Environmental Information, and hail reports from the Community Collaborative Rain, Hail & Snow Network. (*Id.*); (Dkt. No. 28 at 11). Hall used this data to identify an April 15, 2021, hailstorm that he concludes had wind strong enough and hail large enough to cause the observed damage. (Dkt. No. 28-2 at 4–7).

Third, Hall reviewed claim documents and other materials related to the property and the insurance dispute. (*Id.* at 3). This included examining previous inspections and findings. (*Id.*). Hall's report specifically addresses why he believed that the engineering report provided by State Farm is flawed. (*Id.* at 6–7).

Finally, Hall applied his professional experience to correlate the observed damage patterns with the meteorological data, ultimately concluding that an April 15, 2021, hailstorm caused the damage to Shockman's property. (*Id.*). His report explains the reasoning behind this conclusion and connects specific weather data to the observed damage patterns. (*Id.* at 4–7).

Caselaw from this circuit confirms that Hall's methodology—a physical inspection, documentation, analysis of weather data from multiple sources, review of relevant documents, and application of professional experience—represents a reliable methodology used by experts in the field of forensic engineering. *Buttross v. Great Lakes Ins. SE*, No. 1:22-CV-00086, 2023 WL 9285263, at *2–3, *6–8 (N.D. Tex. Dec. 4, 2023) (rejecting reliability challenge to Hall's testimony where "Hall used commercial weather data . . . to develop a list of potential hail-causing storms that occurred at or near the Properties"; "analyzed the characteristics of each storm and determined that just two . . . could have caused the damage to the Properties"; and correlated "splatter marks" observed during a physical inspection with the weather data), *report and recommendation adopted*, 2024 WL 50421 (N.D. Tex. Jan. 4, 2024); *Hub Tex., LLC v. Arch Specialty Ins. Co.*, No. 5:21-CV-00180, 2023 WL 11859535, at *7 (N.D. Tex. Mar. 21, 2023) (finding expert's methodology reliable where expert "personally inspected the Property between June and September 2020, observed wind and hail damage (including micro-fracturing), compared his observations to weather data, utilized secondary testing to confirm moisture

7

intrusion, and then documented and disclosed his findings" (footnote omitted) (collecting cases)).[1]

In short, while Hall's execution of this methodology may be properly subject to criticism on cross-examination, the methodology itself satisfies *Daubert*'s reliability threshold because the "method is generally accepted in the relevant engineering community"—specifically, forensic engineering. *Kumho Tire Co.*, 526 U.S. at 151, 119 S.Ct. at 1176.

### B.   STATE FARM'S OBJECTIONS

The Court turns now to State Farm's objections. State Farm begins with three main contentions about Hall's methodology: (1) Hall did not conduct a credible investigation and relied on "homemade theories"; (2) his causation opinions are conclusory and unreliable; and (3) he started with a conclusion and sought only confirming evidence. (Dkt. No. 27 at 1).

But the substance of State Farm's argument focuses on Hall's inputs and conclusions, not his methodology. State Farm challenges Hall's conclusion that hail can

---

[1]   *See also, e.g., Smith v. State Farm Lloyds*, No. 4:21-CV-00837, 2023 WL 361754, at *3 (E.D. Tex. Jan. 23, 2023) (finding engineer's methodology sufficient where he "used his years of experience[,] . . . visited the home while it was still standing on multiple occasions, analyzed the damage done, and took pictures to help supplement his findings" even though he could not "point to a specific named method or any specific testing that he conducted"); *Johnson v. State Farm Lloyds*, No. 4:21-CV-00158, 2022 WL 16901977, at *5 (N.D. Tex. Oct. 12, 2022); *Kim v. Nationwide Mut. Ins.*, 614 F.Supp.3d 475, 488 (N.D. Tex. 2022); *Newton v. State Farm Lloyds*, No. 4:21-CV-00322, 2022 WL 1217410, at *5 (E.D. Tex. Mar. 31, 2022), *report and recommendation adopted*, 2022 WL 1214260 (E.D. Tex. Apr. 25, 2022); *Bellina v. Liberty Mut. Ins.*, No. 2:19-CV-13711, 2021 WL 1295018, at *9 (E.D. La. Apr. 7, 2021); *Kahlig Auto Grp. v. Affiliated FM Ins.*, No. 5:19-CV-01315, 2021 WL 148056, at *4 (W.D. Tex. Jan. 15, 2021); *Gaffney v. State Farm Fire & Cas.*, No. 2:06-CV-08143, 2009 WL 3188421, at *4 (E.D. La. July 15, 2009).

cause shingle damage at 0.75 inches, arguing that the hail must be at least 1.5 inches to do so. (*Id.* at 16–17). It criticizes his choice not to measure individual hail impacts. (*Id.* at 19–20). It questions his decision not to inspect every portion of the roof. (*Id.* at 21). It disputes his assessment of a single window-screen tear. (*Id.* at 23–24). And it digresses considerably about "redacted" weather data without establishing the data's significance or countering Hall's testimony that he accounted for the data elsewhere in his report. (*Id.* at 12–14); (Dkt. No. 27-5 at 111).

These attacks on Hall's conclusions and data do not show that Hall's methodology is unreliable. The focus of a reliability challenge is not on an expert's conclusions. *Daubert*, 509 U.S. at 595, 113 S.Ct. at 2797. Likewise, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Puga*, 922 F.3d at 294; *see also Johnson v. State Farm Lloyds*, No. 4:21-CV-00158, 2022 WL 16901977, at *5 (N.D. Tex. Oct. 12, 2022) ("[I]n challenging [the causation expert's] methods, Defendant contests the bases and sources of [the expert's] opinions, which yield more favorably to a determination by a jury." (citing *Viterbo*, 826 F.2d at 422)).

In any case, State Farm's three arguments fail on their own terms. As for the first argument—that Hall conducted an insufficient investigation and used "homemade" methods—State Farm never shows how Hall's investigation meaningfully deviates from accepted practices used by similar experts in this field, as shown by caselaw. *See supra* Section III(A). Nor does State Farm explain why any perceived deficiencies warrant exclusion rather than testing through cross-examination. State Farm's "homemade-

9

methodologies" accusation therefore remains a colorful but unexplained and unsubstantiated pejorative.

Next, it's not clear whether State Farm's second and third contentions—that Hall's opinions are conclusory and that he started with a predetermined conclusion—even challenge Hall's methodology. Forming an initial hypothesis—which Hall acknowledged doing, (Dkt. No. 27-5 at 13–14)—does not render an expert's methodology unreliable if he then gathers and analyzes data to test that hypothesis, which Hall did, (*see generally* Dkt. No. 28-2). Similarly, State Farm's characterization of Hall's opinions as "conclusory," (Dkt. No. 27 at 9), is more of an assertion that Hall didn't use a methodology, not that the methodology he used is unreliable. Regardless, this characterization contradicts the evidence in the record demonstrating Hall's systematic approach to his analysis and the evidence supporting his conclusions. (*See generally* Dkt. No. 28-2).

Finally, State Farm's claim that Hall "disregarded any unfavorable data that did not support his assumption that hail was the cause of loss" is unsupported by the record. (Dkt. No. 27 at 11). The deposition testimony cited by State Farm shows Hall explaining why he found State Farm's engineering report flawed, not that he systematically ignored contrary evidence. (Dkt. No. 27-5 at 53–56). Moreover, "[c]ourts routinely reject challenges to the admissibility of expert testimony based on arguments that the expert failed to take into account certain data in forming his or her opinions." *Hub Tex., LLC v. Arch Specialty Ins.*, No. 5:21-CV-00180, 2023 WL 2772052, at *8 (N.D. Tex. Mar. 21, 2023) (quoting *Patton v. Metro. Lloyds Ins.*, No. 5:21-CV-00074, 2022 WL 2898946, at *6 (N.D. Tex.

Feb. 14, 2022)). "Typically, an expert must 'wholly fail to consider alternative causes of the damage' before a court will exclude his testimony on the basis that he did not examine other potential causes." *Buttross*, 2024 WL 50421, at *3 (quoting *Hub Tex.*, 2023 WL 2772052, at *6). That is not what the record shows here. (*See* Dkt. No. 27-5 at 53–56); (Dkt. No. 28-2 at 6–7).

State Farm conflates disagreement with Hall's conclusions and the unreliability of his methodology. The former is not grounds for exclusion under Rule 702. Expert witnesses often reach different conclusions from the same or similar data—this is the essence of the "battle of experts" that juries are routinely asked to resolve. These disagreements are properly addressed through cross-examination and the presentation of contrary evidence, not through exclusion. *Daubert*, 509 U.S. at 596, 113 S.Ct. at 2798.

## IV. CONCLUSION

For the reasons above, the Court finds that Neil Hall's expert testimony satisfies the reliability standards required by Federal Rule of Evidence 702 and *Daubert*. The Court therefore **DENIES** State Farm's Motion to Exclude Opinion Testimony of Plaintiff's Expert Witness, Neil Hall. (Dkt. No. 27).

Signed on March 31, 2025.

                                               **DREW B. TIPTON**
                                               **UNITED STATES DISTRICT JUDGE**