United States District Court
Southern District of Texas
**ENTERED**
September 29, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CARLETON J. SHOCKMAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-CV-02030** |
| | § | |
| **STATE FARM LLOYDS,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Like many others, Plaintiff Carleton J. Shockman's home suffered hail and storm damage in 2021. He claimed coverage for the damage under his insurance policy with Defendant State Farm Lloyds. State Farm denied coverage, concluding that Shockman's loss resulted from excluded causes. Shockman sued State Farm for breach of contract and additionally alleged that the manner in which State Farm handled his claim violated its common-law duty of good faith and fair dealing, Chapters 541 and 542 of the Texas Insurance Code, and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). State Farm now moves for summary judgment, (Dkt. No. 36), arguing that Shockman has no evidence that the policy covers his loss or that State Farm acted unreasonably in the handling of his claim. Genuine fact issues exist on Shockman's breach-of-contract, Section 541.060(a)(3), and Chapter 542 claims, as well as his DTPA claim premised on a violation of Section 541.060(a)(3), but State Farm is entitled to summary judgment on the remaining claims. The Court therefore **GRANTS in part** and **DENIES in part** the Motion.

## I.    BACKGROUND[1]

Shockman owns a home in The Woodlands, Texas, which is covered by a State Farm homeowner's policy.  (Dkt. No. 36-1 at 2).  Shockman submitted three claims for hail and storm damage over a short period: one in March 2021 for alleged damage in February; a second on April 17, 2021, for alleged damage on April 15, 2021; and a third in August 2021 for alleged damage in July.  (Dkt. No. 36-2 at 2–3).  Only the second claim—for alleged damage on April 15, 2021—is the subject of this lawsuit.  (Dkt. No. 1 at 2–3).

State Farm inspected Shockman's property several times and found no storm-related damage to the roof.  (Dkt. No. 36-2 at 2–4).  State Farm communicated its findings to Shockman.  (*Id.* at 53).

Shockman invoked the policy's appraisal process.  (*Id.* at 3–4).  The panel issued a $61,778.97 replacement-cost-value award for damage to the roof, (Dkt. No. 37-4 at 2), but State Farm refused to pay, maintaining that the damage was not caused by a covered peril, (Dkt. No. 36-2 at 59).  Shockman sued for breach of contract, violations of Chapters 541 and 542 of the Texas Insurance Code, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA").  (Dkt. No. 1 at 7–14).

In May 2024, while this litigation was pending, Shockman filed another claim for hail damage from a more recent storm.  (Dkt. No. 36-2 at 4).  State Farm inspected the

---

[1]    Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant.  *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020).  The Court has not weighed evidence or made credibility findings.  *Id.*

property, found covered hail damage, and paid Shockman $46,805.17 to replace his roof. (*Id.* at 4–5); (Dkt. No. 36 at 8). State Farm argues that its payment fully compensates Shockman, eliminating any damages for his breach-of-contract claim. (Dkt. No. 36 at 15–16).

## II.    LEGAL STANDARDS

### A.    SUMMARY JUDGMENT

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).  The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)).  "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).  If evidence is merely colorable or not significantly probative, summary judgment is appropriate.  *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant.  *Carr*, 866 F.3d at 601.  This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075.

**B.    TEXAS'S INSURANCE COVERAGE BURDEN-SHIFTING FRAMEWORK**

Courts applying Texas law analyze coverage disputes under "the Texas insurance coverage burden-shifting framework."  *Buchholz v. Crestbrook Ins.*, 65 F.4th 766, 773 (5th

Cir. 2023).  "In a coverage dispute, the insured has the burden first to prove that their loss falls within the terms of the contract."  *Id.* at 769 (citing *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's, London*, 327 S.W.3d 118, 124 (Tex. 2010)).  "Once the insured demonstrates this, the burden shifts to the insurer, who, to avoid liability, must show that the loss falls into an exclusion to the policy's coverage."  *Id.* at 769–70 (first citing *Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 124; and then citing Tex. Ins. Code § 554.002).  If "the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage."  *Id.* at 770 (quoting *Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 124).

An insured's burden to "prove that their loss falls within the terms of the contract" depends on the contract's terms.  *Id.* at 769.  So, courts "first look to 'the language of the policy.'"  *Id.* (quoting *Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 126).

Shockman's policy provides all-risks coverage for his home.  (*See* Dkt. No. 36-1 at 26).  "'All-risk' insurance covers any peril not specifically excluded in the policy."  *ECF N. Ridge Assocs., L.P. v. ORIX Cap. Markets, LLC*, 336 S.W.3d 400, 403 (Tex. App.—Dallas 2011, pet. denied).  Here, State Farm agreed to "pay for accidental direct physical loss to the property . . . unless the loss is excluded or limited" in the policy.  (Dkt. No. 36-1 at 26).  The Supreme Court of Texas has described similar policy language as creating all-risks coverage.  *See JAW The Pointe, LLC v. Lexington Ins.*, 460 S.W.3d 597, 604 (Tex. 2015).

Even under an all-risks policy, "the insured has the burden first to prove that their loss falls within the terms of the contract."  *Buchholz*, 65 F.4th at 769.  But the burden is modest: all-risks insureds meet "their initial burden . . . simply by showing that their

property suffered physical damage" during the policy period.  *Watson v. Allstate Tex. Lloyd's*, 224 F.App'x 335, 341 (5th Cir. 2007) (per curiam).  This means that "the insured has the initial burden to prove that the loss occurred" but "does not need to prove the cause of the loss."  7 Jordan R. Plitt et al., Couch on Insurance § 101:7 (3d ed. 2024).  Indeed, the Fifth Circuit recently held that a district court had "incorrectly applied the Texas insurance coverage burden-shifting framework" by requiring an insured to prove causation under an all-risks policy.  *Buchholz*, 65 F.4th at 772–73.  Even still, the loss must be "fortuitous" because "fortuity is an inherent requirement of all risk insurance policies."  *Two Pesos, Inc. v. Gulf Ins.*, 901 S.W.2d 495, 502 (Tex. App.—Houston [14th Dist.] 1995, no writ).

Once the insured makes the threshold showing of a fortuitous loss during the policy period, "the burden shifts to the insurer, who, to avoid liability, must show that the loss falls into an exclusion to the policy's coverage."  *Buchholz*, 65 F.4th at 769–70; *see* 5 Jeffery E. Thomas et al., New Appleman on Insurance Law Library Edition § 41.02(1)(b)(i) (2024).  Texas has codified this aspect of the insurer's burden.  *See* Tex. Ins. Code § 554.002.  The Texas Insurance Code provides that (1) "the insurer . . . has the burden of proof as to any avoidance or affirmative defense" and (2) "[l]anguage of exclusion in the contract or an exception to coverage claimed by the insurer . . . constitutes an avoidance or an affirmative defense."  *Id.*  Courts recognize that this statute requires insurers to prove exclusions to all-risks coverage.  *See, e.g.*, *JAW The Pointe*, 460 S.W.3d at 603; *Crocker v. Am. Nat'l Gen. Ins.*, 211 S.W.3d 928, 936 (Tex. App.—Dallas 2007, no pet.); *Buchholz*, 65 F.4th at 769–70.

6

"Finally, 'if the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage.'" *Buchholz*, 65 F.4th at 770 (citation modified) (quoting *Gilber Tex. Constr., L.P.t*, 327 S.W.3d at 124).  An insured can meet this burden by, for example, showing that a policy endorsement covers the loss despite the policy's exclusions.  *See, e.g., id.* at 772–73; *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins.*, No. 3:96-CV-01697, 1998 WL 59493, at *2 (N.D. Tex. Feb. 6, 1998).

Texas's burden-shifting framework matters because the parties' burdens at trial establish their burdens at summary judgment.  "'Where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence,' which 'shifts to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.'"  *Hall v. UiPath, Inc.*, 123 F.4th 419, 422 (5th Cir. 2024) (citation modified) (quoting *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (per curiam)).

But when "the movant also carries the burden of proof at trial, as when he asserts an affirmative defense, his burden is even higher."  *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021).  The movant "must 'establish beyond peradventure'"—i.e., conclusively—"*all* of the essential elements of the claim or defense."  *Id.* (emphasis in original) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  "Only if the movant succeeds must the nonmovant 'designate specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017)).

So an all-risks insurer moving for summary judgment must either (1) show that the insured has no evidence of a physical loss during the policy period or (2) conclusively establish that an exclusion applies. *See Guzman*, 18 F.4th at 160; *Buchholz*, 65 F.4th at 770; *Watson*, 224 F.App'x at 341. Conversely, an all-risks insured responding to summary judgment must (1) provide evidence showing a genuine issue of material fact about whether a loss occurred and, (2) only if the insurer has proved through its evidence that an exclusion applies, "designate specific facts showing that there is a genuine issue for trial" on the exclusion or whether an exception applies. *McCarty*, 864 F.3d at 357; *see Buchholz*, 65 F.4th at 770; *Watson*, 224 F.App'x at 341.

## III.   DISCUSSION

The Court first examines Shockman's coverage claim (breach of contract), where dueling expert opinions about storm damage create factual disputes that a jury must resolve. The Court then addresses Shockman's extracontractual claims, most of which fail because State Farm had a reasonable basis for denying coverage.

### A.   COVERAGE CLAIM (BREACH OF CONTRACT)

The Court analyzes this coverage dispute under "the Texas insurance coverage burden-shifting framework," *Buchholz*, 65 F.4th at 773, keeping in mind the Parties' summary-judgment burdens, *Guzman*, 18 F.4th at 160. That framework establishes three sequential burdens in this all-risks-insurance case: (1) Shockman must first show a fortuitous loss during the policy period; (2) State Farm must then conclusively show that an exclusion applies; and (3) if an exclusion is established, Shockman must show that an exception to the exclusion brings the claim back within coverage. *Buchholz*, 65 F.4th at

769–70; *see also* 5 Thomas et al., *supra*, § 41.02(1)(b)(i).   Here, the analysis stops at step two: State Farm cannot conclusively show that an exclusion applies.

### 1. **Fortuitous Loss**

Under his all-risks policy, Shockman need only show a fortuitous loss during the policy period.  *See Buchholz*, 65 F.4th at 769, 773; *Watson*, 224 F.App'x at 341.  Shockman has met this modest initial burden.  *Cf. Morrison Grain Co. v. Utica Mut. Ins.*, 632 F.2d 424, 430 (5th Cir. 1980) ("The burden of demonstrating fortuity is not a particularly onerous one.").

First, the appraisal panel appraised Shockman's loss at a replacement-cost-value of $61,778.97, and the appraisal umpire documented damage to the property that he attributed to fortuity.  (Dkt. No. 37-4 at 2, 8–51).  Second, Shockman's third-party estimator, Remo Estimating and Scoping, documented damage to various portions of the property, totaling a replacement-cost value of $67,696.08.  (Dkt. No. 37-3 at 6, 9–89).  Third, Shockman's expert, Neil Hall, also documented damage to the property that he attributed to fortuity.  (Dkt. No. 37-6 at 7, 9–44).

Shockman thus makes a prima facie showing of a fortuitous loss during the policy period.  *See Buchholz*, 65 F.4th at 769; *Watson*, 224 F.App'x at 341; *Morrison Grain Co.*, 632 F.2d at 430.  Whether that loss resulted from a covered or excluded cause is a separate question.  *See Buchholz*, 65 F.4th at 772–73.  At this initial stage, Shockman need only show a fortuitous loss—he doesn't need to prove what caused it.  *Id.* at 769; *Watson*, 224 F.App'x at 341.

### 2.    **Exclusion**

The burden now "shifts to [State Farm], who, to avoid liability, must show that the loss falls into an exclusion to the policy's coverage." *Buchholz*, 65 F.4th at 769–70.  As the summary-judgment movant, State Farm has the burden of proof on this issue and "must 'establish beyond peradventure'"—i.e., conclusively—that an exclusion applies. *Guzman*, 18 F.4th at 160 (quoting *Fontenot*, 780 F.2d at 1194).  State Farm has not met this burden.

State Farm chiefly relies on the policy's wear-and-tear and workmanship exclusions to deny coverage. (Dkt. No. 36 at 10–11).  According to State Farm, the damage to Shockman's property consists of "age-related wear, tear, and deterioration; installation and workmanship defects; and the natural consequences of living on a golf course." (*Id.* at 10).  State Farm also claims that there is no evidence of storm-related damage.  (*See id.* at 11–15).

State Farm supports these contentions[2] with three different reports: one from engineer Arash Rahmatian, (Dkt. No. 36-5); one from engineer Jim Crawford, (Dkt. No. 36-3); and one from contractor Brett Hall, (Dkt. No. 36-4 at 2–158).  All three concluded that the observed damage resulted from age-related wear and tear, deterioration, or

---

[2]    State Farm devotes most of its coverage argument to refuting Shockman's hailstorm theory, not proving that wear and tear or faulty workmanship caused the damage. (*See* Dkt. No. 36 at 10–15).  But undermining Shockman's theory does not prove State Farm's, even if it is a step in that direction.  *See Grotts v. State Farm Lloyds*, No. 4:22-CV-02806, 2025 WL 963081, at *6 (S.D. Tex. Mar. 30, 2025).  Under the Texas Insurance Code, once the insured makes a threshold showing, the insurer must prove that the loss falls within an exclusion.  Tex. Ins. Code § 554.002. So, State Farm cannot avoid coverage just by casting doubt on Shockman's theories.  It must affirmatively—and at summary judgment, conclusively—show that an excluded peril caused the damage.  After all, the "purpose of an 'All-Risk' policy is to insure losses when the cause of the loss is unknown."  5 Thomas et al., *supra*, § 41.02(1)(b)(i) (citing *Alton Ochsner Med. Found. v. Allendale Mut. Ins.*, 219 F.3d 501, 504 (5th Cir. 2000)).

workmanship issues rather than hail.  (Dkt. No. 36-5 at 3–5) (Rahmatian); (Dkt. No. 36-3 at 4–8) (Crawford); (Dkt. No. 36-4 at 10) (Hall).  Crawford also examined weather data and concluded that "there was no reasonable possibility of 0.75-inch diameter or larger hail at the subject property" on April 15, 2021.  (Dkt. No. 36-3 at 9).  He notes, however, that "there was likely hail up to 0.9-inch diameter within 1 mile, 1.2-inch diameter hail within 3 miles, and 1.4-inch diameter hail within 5 miles."  (*Id.*).  Still, based on a "1.5-inch [damage] threshold for the subject roof," Crawford concluded that "recent hailstorms were incapable of producing hail at the threshold size required to damage the subject laminated roof shingles."  (*Id.* at 14).

But Shockman's expert, Neil Hall, takes a different view.  Hall documented hail strikes on multiple slopes of the roof, including ten strikes within a single 100-square-foot test square.  (Dkt. No. 37-6 at 4).  Hall observed hail-caused indentations to shingles, the flat roof membrane, window beads, and window screens, and he distinguished those marks from unrelated blisters or age-related wear.  (*See id.* at 3–4, 7).  He also analyzed multiple weather datasets, concluding that the April 15 storm had both the size and directional wind force to cause the observed damage.  (*Id.* at 5–7).  Hall reported that "[t]he April 15, 2021, map shows a strong swath of 0.75"–2.0" hail moving east-southeast at 40 mph, south of the property," and he concluded that the storm passed close enough for wind to carry hail onto Shockman's roof.  (*Id.* at 5–6).  Hall expressly addressed the competing opinions from State Farm's experts and explained why his conclusions differed, criticizing the opposing engineer's reliance on proprietary weather algorithms and the lack of photographic rebuttals.  (*Id.* at 6–7).  Based on his inspection and analysis,

Hall opined that the April 15 storm was the most likely cause of the documented damage and recommended a full roof replacement.  (*Id.* at 7).

Hall is not alone in attributing Shockman's damage to hail.  As the umpire of the appraisal panel, Bob Hovanec—who is listed as a fact witness, (Dkt. No. 39 at 5–6)—reviewed the evidence and documented hail strikes across multiple areas of the roof, including the front slope, rear slope, and rear gable elevations, (*see* Dkt. No. 37-4 at 8–51).  He also identified hail damage to window screens.  (*Id.* at 14–15).  Based on this inspection, Hovanec signed an appraisal award totaling $61,778.97 for a full roof replacement, attributing the loss to hail from the April 15 storm.  (*Id.* at 2).  While the appraisal panel's causation findings do not determine coverage, appraisers may offer factual testimony on causation.  *See Newton v. State Farm Lloyds*, No. 4:21-CV-00322, 2022 WL 1217410, at *4 (E.D. Tex. Mar. 31, 2022), *report and recommendation adopted*, 2022 WL 1214260 (E.D. Tex. Apr. 25, 2022).

As this Court recently explained in a case involving nearly identical issues, "[t]his conflicting evidence creates genuine issues for trial."  *Hansen v. State Farm Lloyds*, No. 4:22-CV-03833, 2025 WL 963079, at *4 (S.D. Tex. Mar. 28, 2025).  A reasonable juror might credit Hall's analysis of both the physical damage and weather data.  Or a juror might find State Farm's experts' wear-and-tear and workmanship explanations more persuasive.  When reasonable jurors could differ on material facts, summary judgment is inappropriate.  *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511.  Moreover, expert testimony "is ordinarily not conclusive even where it is uncontradicted."  *United States v.*

*Jackson*, 19 F.3d 1003, 1007 (5th Cir. 1994) (quoting *United States v. Barton*, 992 F.2d 66, 69 (5th Cir. 1993)).  Here, the expert testimony is contradicted.

"This is a classic 'battle of the experts,' the winner of which must be decided by a jury." *Cox v. Provident Life & Accident Ins.*, 878 F.3d 504, 507 (5th Cir. 2017).  State Farm's request for summary judgment on coverage is, in truth, a request for the Court to credit State Farm's evidence and expert testimony over Shockman's.  (*See* Dkt. No. 36 at 11–13). But the Court "may not make credibility determinations or weigh the evidence" at this stage.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).  For these reasons, the Court denies State Farm's motion for summary judgment on Shockman's breach-of-contract claim.

### 3. <u>2024 Payment</u>

State Farm further argues that, even if Shockman could establish a breach, he has no remaining damages because State Farm already paid to replace the roof in connection with a 2024 claim.  (Dkt. No. 36 at 15–16).  Shockman responds that there remains a difference between the replacement-cost value awarded in the 2021 appraisal and the amount State Farm paid under the 2024 claim, along with potential statutory interest, attorney's fees, and costs related to the original denial.  (Dkt. No. 37 at 16–17).[3]

---

3    Shockman contends that the difference is $7,593.41, (Dkt. No. 37 at 17), but it is unclear from the record how that figure was calculated.  The 2021 appraisal award set the replacement-cost value at $61,778.97.  (Dkt. No. 37-4 at 2).  But the total of the line-item payments for the 2024 claim appears to be lower than the figure Shockman uses to compute the offset.  (*See* Dkt. No. 36 at 8); (Dkt. No. 36-2 at 4–5).  State Farm, meanwhile, has not explained how its $46,805.17 payment satisfies the $61,778.97 appraisal award—a binding determination of value, though not of causation.  In short, even if it were the Court's role to determine the appropriate offset, neither Party has put the Court in a position to resolve the issue on summary judgment.

13

The Court agrees with Shockman.  Whether the 2024 claim payment satisfies Shockman's potential damages from the 2021 claim presents a factual question about the amount of any potential offset.  *See Nelson v. Americas Ins.*, No. 3:17-CV-00850, 2019 WL 5866500, at *10–11 (M.D. La. Nov. 8, 2019) ("[T]he Court finds that genuine issues of material fact preclude summary judgment as to the amount of the offset." (collecting cases)).

## B.   EXTRACONTRACTUAL CLAIMS

Next, Shockman's extracontractual claims.  They fall into four categories: (1) a good-faith-and-fair-dealing claim alleging that State Farm denied coverage in bad faith—that is, without any reasonable basis; (2) Chapter 541 Insurance Code claims, which include both bad-faith claims and independent claims about State Farm's conduct; (3) Chapter 542 Prompt Payment Act claims; and (4) DTPA claims, which incorporate elements of his Insurance Code claims and require similar analysis.  The Court addresses each in turn.

### 1.   <u>Breach of the Duty of Good Faith and Fair Dealing</u>

First, Shockman's claim that State Farm breached its duty of good faith and fair dealing.  Under Texas law, an insurer has a common-law duty of good faith and fair dealing. *Arnold v. Nat'l Cnty. Mut. Fire Ins.*, 725 S.W.2d 165, 167 (Tex. 1987).  Courts assess claims alleging a breach of this duty under the reasonable-basis test. *Higginbotham v. State Farm Mut. Auto. Ins.*, 103 F.3d 456, 459 (5th Cir. 1997).  Under this test, a breach can be found only if there was "*no reasonable basis* for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any

reasonable basis for denial." *Id.* (emphasis in original). "In determining whether a reasonable basis existed for denying a claim, the facts available to the insurer at the time of denial are considered." *Douglas v. State Farm Lloyds*, 37 F.Supp.2d 532, 536 (S.D. Tex. 1999) (citing *Viles v. Sec. Nat'l Ins.*, 788 S.W.2d 566, 567 (Tex. 1990)).

The insured must establish both (1) the absence of a reasonable basis for denying or delaying payment and (2) that the insurer knew or should have known of that absence. *Id.* This requires showing "that there were no facts before the insurer which, if believed, would justify denial of the claim." *Id.* at 542 (quoting *Higginbotham*, 103 F.3d at 459). "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous," the insurer is not liable for breach of the duty of good faith and fair dealing. *Id.* at 536 (quoting *Higginbotham*, 103 F.3d at 459). "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). And "[a] simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith." *Tex. Friends Chabad-Lubavitch, Inc. v. Nova Cas. Co.*, 539 F.Supp.3d 669, 682 (S.D. Tex. 2021) (quoting *Transp. Ins. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994)).

State Farm provides evidence of a reasonable basis for denying coverage. State Farm inspected the property on May 10, 2021, finding no covered hail damage to the roof or exterior of the property. (Dkt. No. 37-1 at 3–11). State Farm sent Shockman a letter the same day communicating its decision. (Dkt. No. 37-2). When Shockman disputed this assessment, State Farm retained a licensed engineer, Arash Rahmatian, to conduct

another inspection.  (Dkt. No. 36-2 at 3).  Rahmatian found workmanship issues with the construction of the roof resulting in long-term water intrusion, age-related deterioration, and signs of exposure to exterior elements, but no storm-related damage to the flat roof, shingled roof, or metal roof.  (*Id.*); (Dkt. No. 36-5 at 3–5).  Based on these inspections, State Farm maintained its position that there was no covered hail damage to the property. (Dkt. No. 36 at 16–18).

Shockman does not dispute that these inspections happened or that the inspectors reached these conclusions—he only disputes the accuracy of the conclusions.  (Dkt. No. 37 at 12–15).  Even so, the results of State Farm's inspections, "*if believed*, would justify denial of the claim."  *Higginbotham*, 103 F.3d at 459 (emphasis added).  State Farm has therefore met its initial burden of introducing undisputed evidence showing a reasonable basis for denying the claim.  *See Switzer v. State Farm Lloyds*, 642 F.Supp.3d 568, 573–75 (W.D. Tex. 2022) (describing the insurer's initial burden and finding that it was satisfied by prompt inspections supporting the insurer's coverage position).

The burden now shifts to Shockman to present evidence showing a genuine dispute about whether State Farm lacked a reasonable basis for its decision or conducted an unreasonable, outcome-driven investigation.  *See id.* at 573, 575.  Shockman's evidence centers on his expert's competing conclusions about causation.  (*See* Dkt. No. 37 at 12–15).  But Shockman's expert prepared his report in July 2023, well after State Farm determined that the claimed damage was not covered.  (Dkt. No. 37-6 at 2).  And the reasonableness of an insurer's actions "must be judged by the facts before the insurer at

the time the claim was denied." *Viles*, 788 S.W.2d at 567. So Hall's conclusions do not bear on State Farm's extracontractual liability.

And in any case, "[a] simple disagreement among experts about whether the cause of loss is covered by the policy will not support a judgment for bad faith." *Moriel*, 879 S.W.2d at 18; *Garcia v. Lloyds*, 514 S.W.3d 257, 277 (Tex. App.—San Antonio 2016, pet. denied), *disapproved of on other grounds by Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806 (Tex. 2019); *see also Thompson v. Zurich Am. Ins.*, 664 F.3d 62, 67 (5th Cir. 2011) ("Conflicting expert opinions, by themselves, do not establish that the insurer acted unreasonably in relying on its own expert." (collecting cases)).

What's more, Shockman's specific allegations of wrongdoing or unreasonable conduct show no more than a bona fide coverage dispute. For example, Shockman claims that "State Farm made misrepresentations on the complete lack [of] damage caused by the hailstorm and the cost of repair and coverage for the storm damage to the Property." (Dkt. No. 37 at 7). But these "misrepresentations" are just State Farm's conclusions, supported by two inspections, that the roof damage resulted from excluded causes. As in other cases, Shockman's allegation of bad faith "just reprises the underlying coverage dispute." *Hansen*, 2025 WL 963079, at *5.

In short, the record evidence shows nothing more than "a bona fide coverage dispute," which "does not demonstrate bad faith." *See Simmons*, 963 S.W.2d at 44. Although issues of reasonableness are normally left for a factfinder to determine, "courts routinely determine as a matter of law that undisputed record evidence establishes an insurer had a reasonable basis for denying . . . claim payment." *Alvarez v. State Farm*

17

*Lloyds*, No. 5:18-CV-01191, 2020 WL 1033657, at *4 (W.D. Tex. Mar. 2, 2020) (collecting cases).

Because Shockman has not raised a genuine issue of material fact about whether State Farm lacked a reasonable basis for its coverage decision, the Court grants summary judgment to State Farm on Shockman's claim for breach of the common-law duty of good faith and fair dealing. *Cf. Hansen*, 2025 WL 963079, at *4–6 (granting summary judgment on nearly identical facts).

### 2.    Texas Insurance Code Violations

Next are Shockman's claims under the Texas Insurance Code.  Shockman alleges violations of Sections 541.060(a)(1), (a)(2)(A), (a)(3), (a)(4), (a)(7); 542.058; and 542.060. (Dkt. No. 1 at 5–9).  Claims under Sections 541.060(a)(1), (a)(2)(A), and (a)(7) require the same showing as a good-faith-and-fair-dealing claim: that the insurer lacked a reasonable basis for its coverage decision. *Hansen*, 2025 WL 963079, at *6.  As a result, these claims fail for the reasons just discussed. *See supra* Section III(B)(1).  This leaves only Shockman's claims under Sections 541.060(a)(3) and (a)(4), along with his Chapter 542 claims.

#### a.    Chapter 541

"Sections 541.060(a)(3) and (a)(4) of the Texas Insurance Code focus on the adequacy and timeliness of communications, not the reasonableness of coverage decisions." *Hansen*, 2025 WL 963079, at *6.  Under Section 541.060(a)(3), an insurer is liable for "failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy . . . for the insurer's denial of a claim." Tex. Ins. Code § 541.060(a)(3). Section 541.060(a)(4), meanwhile, imposes liability for "failing within a reasonable time

18

to . . . affirm or deny coverage of a claim to a policy holder." *Id.* § 541.060(a)(4).  The Court denies summary judgment on the Section 541.060(a)(3) claim dealing with the adequacy of State Farm's explanation for its denial but grants summary judgment on the Section 541.060(a)(4) claim dealing with the timeliness of the denial.

i.    Section 541.060(a)(3)

Starting with Section 541.060(a)(3)'s requirement that insurers provide reasonable explanations for claim denials, State Farm sent a coverage-denial letter the day of the May 10, 2021, inspection.  (Dkt. No. 36-2 at 53).  The letter states in relevant part: "As we discussed, our inspection did not reveal any accidental direct physical loss to your home. Accordingly, we are unable to issue payment to you."  (*Id.*).  State Farm has not offered any targeted briefing on this issue.  (Dkt. No. 36 at 19) (stating only that "State Farm communicated its findings to Plaintiff").  And without more information about the discussions referenced in the letter, the Court cannot determine whether the letter constitutes a reasonable explanation as a matter of law.  *Compare Winterfield United Methodist Church v. Church Mut. Ins.*, No. 6:23-CV-00558, 2024 WL 5356135, at *11 (E.D. Tex. Dec. 17, 2024) (denying summary judgment on a Section 541.060(a)(3) claim where insurer had "not presented any case law on what a reasonable explanation is for a denial of coverage" or "even addressed Plaintiff's claims" on the issue), *report and recommendation adopted*, 2025 WL 63670 (E.D. Tex. Jan. 9, 2025) *with Hansen*, 2025 WL 963079, at *7 (granting summary judgment on a Section 541.060(a)(3) claim where insurer had at least cited the applicable policy exclusions in its denial letter).  Accordingly, the Court denies summary judgment on Shockman's Section 541.060(a)(3) claim.

ii.     Section 541.060(a)(4)

Next, Section 541.060(a)(4) requires insurers to "affirm or deny coverage" "within a reasonable time."  Tex. Ins. Code § 541.060(a)(4).  The record shows that State Farm promptly affirmed or denied coverage.  State Farm inspected the property and issued its coverage determination on May 10, 2021, less than a month after receiving Shockman's claim.  (Dkt. No. 36 at 5); (Dkt. No. 36-2 at 53).  Moreover, State Farm's representative states, without contradiction from Shockman, that the roof inspection was delayed for over a week at the request of Shockman's contractor.  (Dkt. No. 36-2 at 3).

Courts in this district have found similar or even longer response times reasonable as a matter of law.  *See Lee v. Catlin Specialty Ins.*, 766 F.Supp.2d 812, 825 (S.D. Tex. 2011) (finding that a six-month delay between claim notification and completion of the investigation was reasonable); *Thompson*, 2024 WL 4544783, at *6 (eight-day response time was "eminently reasonable"); *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, No. 4:09-CV-00422, 2016 WL 5539895, at *41 (S.D. Tex. Sept. 29, 2016) (11-day response time was reasonable as a matter of law), *rev'd in part on other grounds*, 917 F.3d 352 (5th Cir. 2019); *Torres v. Lloyd's of London Syndicate No. 4242*, No. 1:10-CV-00200, 2011 WL 6257144, at *10 (S.D. Tex. Dec. 14, 2011) (denying claim within 39 days was reasonable as a matter of law); *Hansen*, 2025 WL 963079, at *8 (two weeks reasonable as a matter of law).

Shockman does not respond to this issue beyond a conclusory and unexplained allegation that State Farm "failed to affirm or deny coverage within a reasonable amount of time without conducting a reasonable investigation."  (Dkt. No. 37 at 7).  In short, Shockman has failed to show a genuine fact issue on the timeliness of State Farm's

coverage determinations.  The Court thus grants summary judgment to State Farm on Shockman's Section 541.060(a)(4) claims.

> b.    Chapter 542

Shockman also asserts claims under Chapter 542 of the Texas Insurance Code, known as the Texas Prompt Payment of Claims Act ("TPPCA").  Under the TPPCA, an insurer must pay statutory interest and attorney's fees if it delays payment of a claim for which it is liable beyond the applicable statutory period.  Tex. Ins. Code § 542.058.

Chapter 542 mandates "statutory damages for failure to pay an insurance claim within a specified time if an insurer is found liable under a policy, even if the insurer had a reasonable basis for denying coverage."  *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 861 (5th Cir. 2003) (per curiam) (interpreting a prior version of the statute, now recodified without modification as Chapter 542).  "To prevail on a TPPCA claim for damages and interest, an insured must demonstrate the insurer's (1) liability under the policy, and (2) failure to comply with the TPPCA."  *Advanced Indicator & Mfg., Inc. v. Acadia Ins.*, 50 F.4th 469, 477 (5th Cir. 2022) (per curiam).  In other words, the insured must show only "that the requisite time has passed and the insurer was ultimately found liable for the claim."  *Performance Autoplex II Ltd.*, 322 F.3d at 861.

"A wrongful rejection of a claim, if reduced to judgment, can be considered a delay in payment under the TPPCA."  *Advanced Indicator & Mfg., Inc.*, 50 F.4th at 477 (first citing *Higginbotham*, 103 F.3d at 461; and then citing *Barbara Techs. Corp.*, 589 S.W.3d at 819–20).  "Accordingly, should [Shockman] succeed on [his] breach claim, [he] may succeed on [his] TPPCA claim as well."  *Id.* at 477–78.  Because fact issues remain on Shockman's

breach-of-contract claim, State Farm is not entitled to summary judgment on Shockman's Chapter 542 claim. *See id.* The Court therefore denies summary judgment on Shockman's claims under Sections 542.058 and 542.060.

### 3.    DTPA Claims

Finally, the Court addresses Shockman's DTPA claims. (Dkt. No. 1 at 9–10). The DTPA provides Texas consumers a cause of action for deceptive business practices, including violations of Chapter 541 of the Texas Insurance Code. *See* Tex. Bus. & Com. Code §§ 17.46(b), .50(a)(4).

Shockman's DTPA claims fall into two categories. First, he brings DTPA claims based on alleged violations of Chapter 541 of the Texas Insurance Code. Second, he alleges independent DTPA violations based on State Farm's claims-handling services and purported misrepresentations about the policy's benefits.

As just discussed, Shockman cannot establish violations of most of Chapter 541's unfair-settlement provisions—specifically, Sections 541.060(a)(1), (a)(2)(A), (a)(4), and (a)(7). *See supra* Section III(B)(2). But fact issues remain on Shockman's Section 541.060(a)(3) claim. *See supra* Section III(B)(2)(a)(i). Because Shockman's Insurance Code-based DTPA claims depend on proving those underlying violations, his DTPA claims based on Sections 541.060(a)(1), (a)(2)(A), (a)(4), and (a)(7) necessarily fail. But his DTPA claim based on Section 541.060(a)(3) survives for the same reasons his underlying Insurance Code claim survives. *See Jesus Church of Victoria Tex., Inc. v. Church Mut. Ins.*, No. 6:19-CV-00093, 2022 WL 4238089, at *10–11 (S.D. Tex. Sept. 13, 2022); *Hansen*, 2025 WL 963079, at *9.

Shockman's laundry-list DTPA claims—if any are sufficiently alleged—fail. State Farm argues that Shockman "copy-and-pasted a generic laundry list of alleged DTPA violations . . . yet . . . provided no evidence of the alleged violations." (Dkt. No. 36 at 18). In response, the only attempt Shockman makes to connect State Farm's actions to a specific laundry-list provision is to argue that State Farm "made certain representations regarding the policy it offered to Plaintiff in that it would cover hail damage" and that, in doing so, State Farm "[r]epresented that goods or services had sponsorship, approval, characteristics, uses, benefits, or quantities they did not have." (Dkt. No. 37 at 18) (quoting Tex. Bus. & Com. Code § 17.46(b)(5)).

As explained above, this claim simply reprises the underlying coverage dispute. *See supra* Section III(B)(1); *see also Hansen*, 2025 WL 963079, at *9. State Farm did not misrepresent the policy's coverage; the policy does cover hail damage—as shown by State Farm's coverage of the 2024 claim. (Dkt. No. 36 at 8). State Farm denied coverage for the 2021 damage because it believed, not that the policy does not cover hail damage, but that the damage *was not caused by hail*. (*Id.* at 10–15).

Fact issues remain about whether State Farm's conduct was a breach of contract, *see supra* Section III(A). But without more, it does not violate the DTPA. "The Texas Supreme Court has made clear that '[a]n allegation of a mere breach of contract, without more, does not constitute a "false, misleading or deceptive act" in violation of the DTPA.'" *Hernandez v. Ikon Off. Sols., Inc.*, 306 F.App'x 180, 182 (5th Cir. 2009) (per curiam) (alteration in original) (quoting *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 304

(Tex. 2006)).  Shockman has no evidence of anything "more" than a breach-of-contract dispute.  *Cf. Hansen*, 2025 WL 963079, at *9.

In sum, in response to State Farm's no-evidence challenge, Shockman has not shown a genuine fact issue on his laundry-list DTPA claims or his DTPA claims based on Sections 541.060(a)(1), (a)(2)(A), (a)(4), and (a)(7).  The Court thus grants summary judgment on those claims.  But because fact issues remain on his Section 541.060(a)(3) claim, his DTPA claim based on that provision survives summary judgment.

## IV.    CONCLUSION

For the reasons above, the Court **GRANTS in part** and **DENIES in part** State Farm's Motion for Summary Judgment.  (Dkt. No. 36).  Summary judgment is **GRANTED** on Shockman's claims for breach of the duty of good faith and fair dealing, violations of Texas Insurance Code Sections 541.060(a)(1), (a)(2)(A), (a)(4), and (a)(7), laundry-list DTPA violations, and DTPA violations based on Sections 541.060(a)(1), (a)(2)(A), (a)(4), and (a)(7).  These claims are therefore **DISMISSED WITH PREJUDICE**.  But summary judgment is **DENIED** on Shockman's breach-of-contract, Section 541.060(a)(3), and Chapter 542 claims, as well as his DTPA claim based on Section 541.060(a)(3).

IT IS SO ORDERED.

Signed on September 26, 2025.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**